IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDRA L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:17-cv-417 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Sandra L. ("Sandra") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Sandra alleges that the Administrative Law Judge ("ALJ") erred because he failed to properly evaluate the opinions of Sandra's treating primary care physician.

I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Sandra's Motion for Summary Judgment (Dkt. 12) and **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sandra failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sandra filed for DIB and SSI on January 25, 2013, claiming disability due to back and neck problems/right knee problems/tennis elbow, tendonitis in her right hand, and osteoporosis, with an alleged onset date of March 2, 2012. R. 79, 90. Sandra was 55 years old when she applied for DIB and SSI, making her 53 years old on her alleged onset date. Id. Based on her earnings record, the ALJ determined that Sandra had acquired sufficient quarters of coverage to remain insured through September 30, 2017. R. 18, 222. Thus, she must show that her disability began on or before September 30, 2017, and existed for twelve continuous months to receive DIB. R. 18, 20; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Additionally, to receive SSI, Sandra must show that she has been disabled for at least twelve months prior to the date of filing her disability application. R. 79. The state agency denied Sandra's applications at the initial and reconsideration levels of administrative review. R. 79–123. On June 22, 2016, ALJ Thomas W. Erwin held a hearing to consider Sandra's claims for DIB and SSI. R. 43–68. Counsel represented Sandra at the hearing, which included testimony

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

from vocational expert Mark Howlin. R. 43. On August 24, 2016, the ALJ entered his decision analyzing Sandra's claims under the familiar five-step process[3] and denying her claim for benefits. R. 18–37.

The ALJ found that Sandra had not engaged in substantial gainful activity since March 2, 2012, the alleged onset date. R. 20. The ALJ determined that Sandra suffered from the severe impairments of lumbar degenerative disc disease and degenerative joint disease of the right knee. R. 21–22, 24. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment, specifically listings 1.02 (major joint dysfunction) or 1.04 (disorders of the spine). R. 22. The ALJ found that Sandra's medically determinable impairments of osteoporosis and right wrist pain were non-severe. R. 24, 248. The ALJ also determined that Sandra's neck and shoulder pain was not medically determinable, as there were no diagnoses of any neck or shoulder impairments. Id. The ALJ found that the record did not establish any medically determinable mental impairment. Id. He determined that Sandra has no more than mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. R. 21, 24.

The ALJ concluded that Sandra retained the residual functional capacity ("RFC") to perform sedentary work. R. 22. Regarding limitations, the ALJ determined that Sandra can: never operate foot controls, crawl, or climb ladders, ropes, or scaffolds; occasionally climb

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

ramps or stairs, balance, stoop, kneel, or crouch; and have no more than occasional exposure to vibrations or other hazardous machinery, and to operational control of moving machinery. Id. The ALJ ultimately concluded that Sandra was capable of performing her past relevant work as a receptionist and accounting clerk, as actually performed by Sandra and as generally performed in the national economy. R. 35. Thus, the ALJ concluded that Sandra was not disabled. R. 36–37. The Appeals Council denied Sandra's request for review on July 26, 2017. R. 1–5.

## ANALYSIS

Sandra alleges that the ALJ erred because he failed to properly evaluate the opinions of her treating primary care physician, Michael A. Malpass, M.D., and so substantial evidence does not support the ALJ's decision.

**A. Medical History**

1. Physical Impairments

In her initial disability report, Sandra claimed disability based on back and neck problems/right knee problems/tennis elbow, tendonitis in her right hand, and osteoporosis. R. 79, 90. Sandra testified that her pain is primarily in her lower back and right leg, particularly in her right knee. R. 58, 248. Sandra reported the pain started after a car accident in 2001. R. 248–49. She testified to using a cane for around five years, although her doctors never prescribed one. R. 49–50. Sandra testified that she stopped working in 2012 because her back kept her from doing her job. R. 52. There was no precipitating event at that time; instead, Sandra just decided she could no longer work. R. 53. Sandra lies down for four to five hours each day because of pain. R. 59. Sandra testified to taking many medications for her condition, including Lortab, Robaxin, Xanax, and Aleve. R. 54. The medication does not cause any side effects. R. 249.

Medical records show that Sandra went to the emergency room in March 2012 for what

was determined to be a right wrist sprain. R. 295–304. In her March 2013 function report, Sandra reported having no problems with personal care and was able to prepare complete meals. R. 252. In terms of housework, Sandra reported dusting, picking up, and doing laundry. Id. She stated she went outside often and was able to drive, and did her own shopping. R. 253. Her hobbies included reading, puzzles, and listening to music, and she claimed to not have any problems with concentration. R. 250, 254. In an April 2014 questionnaire, Sandra claimed nothing relieved her back pain. R. 266. She also reported that her medication had started causing side effects, including drowsiness, trouble sleeping, constipation, and swelling in her ankles. Id. In her April 2014 function report, Sandra reported that she had started needing some help with dressing and bathing, and she could only prepare sandwiches or microwave things. R. 268–69. Sandra stated she had started using a cane and received a disabled parking placard. R. 274.

In October 2015, Sandra had a lumbar spinal surgical evaluation with Jonathan J. Carmouche, M.D. R. 313. He noted that her back pain began after a car accident in 2001. R. 314. Dr. Carmouche observed that Sandra had normal flexion, extension, and lateral bending, a stable gait, and tenderness in her lumbar region upon palpation. R. 315. An x-ray indicated Sandra had degeneration, vacuum disc sign, and hypertrophic facet joints at L4-L5 and L5-S1. R. 316. It also showed loss of disc height at L5-S1. Id. The results of a follow-up CT scan were similar to those of the x-ray. R. 356. Dr. Carmouche diagnosed lumbar degenerative disc disease, and provided Sandra with home exercises. Id. He did not recommend surgery, but instead suggested injections and a pain management consultation. R. 316. Sandra testified she was not able to get injections because of insurance problems. R. 61.

Sandra went to physical therapy beginning in October 2015. R. 328. Her therapists reported that she was making good progress and responding to treatment with either decreased

5

pain or no increased pain. R. 335, 339, 342. At other times, the therapists reported that she displayed fair progress, reported increased pain, and had no significant improvement. R. 337. Sandra was discharged less than a month after beginning PT because she was intolerant to all therapy interventions. R. 344. Sandra then had a pain management consult in December 2015. R. 358. Curiously, the physician described her activity level as "somewhat active." R. 359. The doctor recognized that Sandra was taking medications without significant adverse effects. Id. He also recommended injections. R. 363. Sandra testified that she stopped going to the pain management doctor because nothing was working. R. 63.

At the hearing, the ALJ provided extra time for Sandra to submit records from Dr. Malpass, her primary care physician, because there were very few records in the evidence from before 2015. R. 54. The records from Dr. Malpass still seem scattered. In April 2014, Dr. Malpass filled out a disabled parking placard application on her behalf. R. 382–83. He also filled out a form in December 2014 for the Department of Social Services. R. 372. Otherwise, the record contains only scattered notes from Dr. Malpass that are largely illegible. R. 373–81.

2. Medical Opinion Evidence

In December 2013, as part of the state agency's initial disability determination, Josephine Cader, M.D., reviewed the record and determined that Sandra's severe medically determinable impairments included osteoarthrosis and allied disorders, sprains and strains, and spine disorders. R. 83, 94. As part of Sandra's physical RFC evaluation, Dr. Cader determined that Sandra could lift and/or carry twenty pounds occasionally and ten pounds frequently; could stand or walk for six hours and sit for six hours in an eight-hour workday; and could not push, pull, or operate foot controls with her right lower extremity. R. 84–85, 95–96. Dr. Cader also determined that Sandra had postural limitations, namely, she could never crawl; occasionally kneel and crouch;

frequently stoop and climb ladders/ropes/scaffolds; and balance and climb ramps/stairs without limitation. R. 85, 96. She determined that Sandra had no manipulative, visual, communicative, or environmental limitations. R. 85, 96. Dr. Cader ultimately concluded that Sandra was capable of light work, and that she was capable of performing her past relevant work as an order clerk as generally performed in the national economy. R. 83, 87, 94, 98.

In December 2013, William Humphries, M.D., completed a consultative examination for the state agency. R. 369. Dr. Humphries diagnosed Sandra with chronic thoracolumbar strain posttraumatic with probable degenerative joint disease and degenerative disc disease, and posttraumatic degenerative joint disease of the right knee. R. 371. Dr. Humphries determined that Sandra could sit, stand, and walk each for six hours in an eight-hour workday; lift twenty pounds occasionally and ten pounds frequently; occasionally climb, kneel, and crawl; and stoop and crouch without limitation. Id. She would be unable to use right foot controls. Id. He found that she would have no restrictions regarding heights, hazards, and fumes. Id. Dr. Humphries observed that Sandra's neck, thoracic and lumbar back, and right knee were tender to palpation. R. 370. He reported that Sandra could move on and off the exam table without difficulty and had a mildly antalgic gait on the right knee, but was able to move without an assistive device. Id.

As part of reconsideration of the state agency's disability determination, Robert McGuffin, M.D., evaluated the records in July 2014. He found the same severe medically determinable impairments as Dr. Cader. R. 106, 118. Dr. McGuffin made a slightly different RFC determination than Dr. Cader, as he determined Sandra could occasionally push, pull, and operate foot controls with her right leg, and that she should avoid concentrated exposure to vibration and hazards, like machinery and heights. R. 107–09, 119–121. Dr. McGuffin likewise determined that Sandra was capable of performing her past relevant work as an order clerk as

generally performed in the national economy. R. 110, 122.

In March 2015, Sandra's treating physician, Michael Malpass, M.D., completed a physical medical assessment of ability to do work-related activities form. R. 321–22. Dr. Malpass alleged that, because of Sandra's back pain, she could only: lift and/or carry ten pounds occasionally and five pounds frequently; stand or walk for four hours and sit for six hours in an eight-hour workday; never crawl, kneel, or climb; and occasionally crouch, stoop, and balance. Id. He alleged Sandra was limited in reaching and pushing/pulling, and had restrictions regarding heights, moving machinery, extreme temperatures, and vibration. R. 322. Dr. Malpass noted throughout the entire form that Sandra's own descriptions informed his findings. R. 321–22.

### B. Treating Physician's Opinion

In her only assignment of error, Sandra argues that the ALJ failed to properly evaluate the opinions of her treating primary care physician, Dr. Malpass. She alleges that Dr. Malpass found greater physical limitations than were accounted for in the RFC, and Dr. Malpass's limitations should have been included because they were consistent with the overall record. Pl.'s Br. at 10, Dkt. 13. She asserts that because Dr. Malpass has evaluated her regularly since 2006, he is in the best position to render opinions about her medical condition and, thus, the ALJ should have accorded his opinion great or considerable weight. Id. at 13–14. In response, the Commissioner argues that substantial evidence supports the ALJ's decision to accord less weight to Dr. Malpass's opinions because those opinions were inconsistent with his own sparse treatment records, the records of other physicians, and the entire record as a whole. Def.'s Br. at 11, Dkt. 15.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in

8

[the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Brown , 873 F.3d at 256. Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, he must consider the following factors to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)). The Commissioner does not dispute that Dr. Malpass was Sandra's treating physician, and I find that the ALJ appropriately considered the relevant factors and the record in determining the weight to give to Dr. Malpass's opinions.

Sandra points to three specific opinions from Dr. Malpass that she claims deserve more weight, including a Request for Medical Information form that Dr. Malpass filled out for the Department of Social Services in December 2014. R. 372. In that form, Dr. Malpass diagnosed

9

Sandra with back pain, and noted she sometimes had difficulty walking (requiring a cane), had difficulties lifting and bending, and the pain affected her concentration. Id. He listed her prognosis as "poor" because her condition was longstanding and worsening. Id. He then checked a box that stated his diagnosis rendered Sandra unable to work permanently. Id. Sandra argues that the ALJ failed to provide a good reason as to why he gave this opinion less weight, as it indicates that Sandra is permanently disabled. Pl.'s Br. at 11, Dkt. 13.

The ALJ gave "relatively less weight" to the this assessment. R. 34. He determined that this opinion was "less clearly articulated" than Dr. Malpass's subsequent assessment in March 2015, in which Dr. Malpass estimated that Sandra was able to stand and walk for four hours in an eight-hour day. Id. Dr. Malpass also did not indicate Sandra needed a cane in his subsequent assessment. Id. The ALJ recognized that Dr. Malpass's later opinion was "more consistent with the totality of the evidence," and listed objective medical evidence supporting that determination, including a lack of reports of Sandra falling and normal mental examinations. Id.

Sandra also pointed out her parking placard application from earlier that year in April 2014, in which Dr. Malpass certified that Sandra had a permanent disability limiting her ability to walk. R. 382. He stated she was unable to walk 200 feet without stopping to rest. R. 383. Sandra argues this finding is relevant because the walking restriction would preclude Sandra from returning to her past work as a receptionist and accounting clerk. Pl.'s Br. at 10, Dkt. 13.

In discussing the parking placard application, the ALJ recognized that Dr. Malpass did not check the box for the option that the person cannot walk without the use of or assistance of any of the following: another person, brace, cane, crutch, prosthetic device, wheelchair, or other assistive device. R. 28. The ALJ pointed out that Sandra's treating providers did not prescribe to her a cane or indicate that it was medically necessary. R. 31. While the ALJ did not explicitly

10

state that the parking placard application conflicted with Dr. Malpass's later opinion, the same evidence the ALJ discussed to support his evaluation of the December 2014 opinion applies. For example, the parking placard application was certainly less detailed than the 2015 opinion, as Dr. Malpass only checked certain boxes and did not provide any explanations. The later assessment estimating Sandra could stand or walk for four hours conflicts directly with the application saying she could not walk more than 200 feet. Seeing as the application is not consistent with the 2015 opinion, which the ALJ found to be more consistent with the record, substantial evidence supports the ALJ's decision to not defer to Dr. Malpass's check marks in the application.

The last opinion Sandra references is the March 2015 physical assessment. Sandra seems to argue that according less weight to this opinion, because it was largely based on "patient descriptions," was erroneous, as the opinions are "reasonably reflective" of Dr. Malpass's actual opinion. Pl.'s Br. at 12, Dkt. 13. Additionally, Dr. Malpass included a reaching limitation that the ALJ did not develop in his RFC determination, which would have impacted the ALJ's finding of whether Sandra could return to past work. Id.

The ALJ discussed the March 2015 physical assessment at length and only gave it "some weight." R. 33. The ALJ laid out Dr. Malpass's findings and recognized that "these exertional limitations *do not exceed the demands of sedentary work*." Id. (emphasis added). Dr. Malpass's opinion thus did not indicate that Sandra is incapable of working. The ALJ then discussed how many of Dr. Malpass's limitations were vague and based on "patient description." Id. The ALJ explained that some of Dr. Malpass's exertional limitations were reasonable in light of Sandra's complaints of pain, combined with her limited treatment history and mild to moderate objective abnormalities. Id. He then concluded that "the remaining limitations appear somewhat overstated relative to the same evidence, especially given that [most of the] limitations assessed were based

11

on 'patient description.'" Id. To the ALJ, the fact that most of the limitations were based on Sandra's subjective reports was problematic because Dr. Malpass's entire assessment was based not on Dr. Malpass's own observations of Sandra, but on Sandra's own complaints of pain and medical limitations.

It is appropriate for an ALJ to question a treating physician's opinion if it relies on a claimant's subjective allegations, especially where the ALJ finds the claimant's statements regarding her symptoms and their severity to be less than credible. Weaver v. Colvin, Civil Action No. 3:15-cv-00026, 2016 WL 4768841, at *11 (W.D. Va. Sept. 13, 2016) (citing Morris v. Barnhart, 78 Fed. Appx. 820, 824 (3d Cir. 2003) (an ALJ may properly discredit a physician's findings that were premised largely on a claimant's own accounts of his symptoms and limitations where the claimant's complaints are properly discounted)). The ALJ here discussed Sandra's subjective complaints of impairment at length. For over three pages of his decision, the ALJ described Sandra's subjective allegations, including from her disability reports, questionnaires, and her hearing testimony. R. 23–27. He then explained that his "[r]eview of the medical and other evidence of record reveals a number of inconsistencies that tend to show a lesser degree of severity and limitation than generally alleged by the claimant." R. 31. In support, the ALJ discussed that there is a "conspicuous absence" of documented medical care surrounding the alleged onset date; Sandra was able to work for years, even though her pain began in 2001; no provider determined that a cane was medically necessary; Sandra had "meaningful relief" from conservative medical treatment, including medications, heat, stretching, and massage; Sandra did not pursue pain management; and Sandra's testimony that pain impairs her concentration is not supported by her own function reports. R. 31–32. The ALJ listed numerous objective findings that directly conflicted with Sandra's allegations of disabling pain,

including evidence of her gait, straight leg raise tests, strength, imaging studies, and more. R. 32. Based on his protracted discussion of Sandra's credibility and its lack of support by the medical evidence, and of how that impacted his weighing of Dr. Malpass's opinion, I find that substantial evidence exists to accord Dr. Malpass's opinion only some weight.

Overall, the ALJ appropriately considered the relevant factors and the record in determining the weight to give to Dr. Malpass's opinions. Contrary to Sandra's contention that the ALJ did not provide good reasons or "persuasive contradictory evidence" for discounting Dr. Malpass's opinions, the ALJ specifically discussed how frequently Dr. Malpass examined Sandra, whether medical evidence supported his opinions, and the opinions' overall inconsistency with the record as a whole. See Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the [§ 404.1527(c)] factors and provides good reasons for his decision."). Substantial evidence supports the ALJ's determination that Dr. Malpass's first two opinions should be accorded less weight because they were inconsistent with the objective medical evidence and conflicted with his later, more detailed opinion. The ALJ also properly recognized the overwhelming amount of objective evidence that contradicts both Sandra's allegations and Dr. Malpass's opinions. Accordingly, I find that substantial evidence supports the ALJ's decision to accord Dr. Malpass's opinions less weight. The ALJ did his job: he reviewed the medical evidence of record, weighed the medical opinions, and determined an RFC that represents Sandra's actual functional capacity.[4]

---

[4] Sandra also argues that the ALJ improperly evaluated the impact of her pain on her concentration and erroneously failed to take that into consideration in determining whether Sandra was capable of performing past work. Pl.'s Br. at 13, Dkt. 13. However, no medical opinion source found that Sandra had a severe mental impairment. In fact, Sandra does not allege a disabling mental condition, and her counsel conceded at the hearing that there is no diagnosis of a mental health impairment. R. 57. Sandra herself filled out numerous function reports stating that she had absolutely no mental impairments, including with concentration. R. 254–55, 272. Regardless, the ALJ actually did consider Sandra's pain and its impact in his overall analysis (R. 21, 34), so I do not find error here.

13

**CONCLUSION**

The ALJ here was exceptional in reviewing the entire record and discussing the objective and subjective evidence, thoroughly explaining his conclusions, and providing the evidence that supported those conclusions. I simply cannot find that substantial evidence does not support the ALJ's entire opinion. Accordingly, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Sandra's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 20, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge